## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**,
1156 15th Street NW, Suite 1250
Washington DC, 20005

       Plaintiff,

     v.

**FEDERAL BUREAU OF INVESTIGATION,**
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

and

**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

       Defendants.

Civil Action No. _____

*Related to*:
Civil Action No. 15-cv-01392 (RJL)

## COMPLAINT

The Reporters Committee for Freedom of the Press ("Reporters Committee" or "RCFP") by and through its undersigned counsel, hereby allege as follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief brought by the Reporters Committee, a nonprofit association dedicated to safeguarding the First Amendment's guarantee of a free and unfettered press.

2.      By this action, RCFP seek to compel the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (collectively, "Defendants") to comply with their

obligations under FOIA to release requested records concerning the FBI's practice of impersonating members of the news media, including the Associated Press ("AP").

## PARTIES

3.      The Reporters Committee is an unincorporated nonprofit association located at 1156 15th St. NW, Suite 1250, Washington, DC 20005.

4.      Defendant United States Department of Justice ("DOJ") is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiffs seek.  The DOJ's headquarters are located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

5.      Defendant Federal Bureau of Investigation ("FBI") an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f), and a component of Defendant DOJ, that has possession, custody, and/or control of the records that Plaintiffs seek. Its headquarters are located at 935 Pennsylvania Avenue, NW, Washington, D.C. 20535.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### Background

8.      In October of 2014 it came to light, through documents released by the FBI in response to a FOIA request made by the Electronic Frontier Foundation ("EFF"), that in 2007 the FBI had masqueraded as a member of the news media—specifically, as the AP—in order to deliver surveillance software to a criminal suspect's computer. *See Endpoint Surveillance Tools (CIPAV)*, https://www.eff.org/document/fbicipav-08pdf (last accessed Feb 14, 2018).

9.      The documents obtained by EFF showed that, as part of an investigation into a series of bomb threats at Timberline High School in Lacey, Washington in June of 2007, the FBI had obtained a warrant to deliver a specific type of surveillance software known as a "Computer and Internet Protocol Address Verifier" ("CIPAV") to a social media account associated with the threats.  Once delivered, the CIPAV would send "the activating computer's IP address and/or MAC address, other environment variables, and certain registry-type information to a computer controlled by the FBI," thus enabling the FBI to identify the computer's location and its user.  *Id.* at p. 33.

10.      On or about October 28, 2014, the FBI confirmed that, in order to successfully deliver a CIPAV to the bomb threat suspect's computer, FBI agents had sent an electronic communication with a link to a fake news article headlined, "Bomb threat at high school downplayed by local police department," and "Technology savvy student holds Timberline High School hostage"; the FBI attributed its fabricated story to "The Associated Press."  *See id.* at p. 62; *see also* Gene Johnson, *FBI says it faked AP story to catch bomb suspect*, The Associated Press (Oct. 28, 2014), http://perma.cc/ZH7W-XBFS.  When the FBI's bomb threat suspect clicked on the link, he unknowingly downloaded the CIPAV.

11.      In addition to confirming that FBI agents had fabricated and distributed a phony AP story in order to dupe a suspect into downloading surveillance software, on or about October 28, 2014, FBI officials reportedly told members of the media that the agency was examining existing policies concerning agency impersonation of journalists and news organizations.  Ellen Nakashima & Paul Farhi, *FBI lured suspect with fake Web page, but may have leveraged media credibility*, The Wash. Post (Oct. 28, 2014), https://perma.cc/A5NX-UXE2.

12.     Shortly thereafter, on or about October 30, 2014, AP's General Counsel Karen

Kaiser hand delivered to the DOJ a letter addressed to Attorney General Eric Holder, expressing

concern over the FBI's actions, and asking for additional information regarding how often, and

under what circumstances, the FBI poses as a member of the press.   *See* Gene Johnson, *AP asks*

*for accounting of fake FBI news stories*, The Associated Press (Oct. 30, 2014),

http://perma.cc/FPY7-U8F3; Letter from Karen Kaiser to Attorney General Holder (Oct. 30,

2014), https://perma.cc/W46W-2DLW.

13.     Ms. Kaiser's letter protested "in the strongest possible terms the FBI's fabrication

and publication of a fake Associated Press news story in connection with its June 2007

investigation," stating:  "The FBI both misappropriated the trusted name of The Associated Press

and created a situation where our credibility could have been undermined on a large scale . . . .  It

is improper and inconsistent with a free press for government personnel to masquerade as The

Associated Press or any other news organization.  The FBI may have intended this false story as

a trap for only one person.  However, the individual could easily have reposted this story to

social networks, distributing to thousands of people, under our name, what was essentially a

piece of government disinformation."  *Id.*

14.     On or about November 6, 2014, the Reporters Committee, writing on behalf of

itself and 25 other media organizations, also sent a letter to Attorney General Holder and FBI

Director James Comey voicing concerns about the FBI's actions, including its apparent failure to

follow internal guidelines regarding impersonation of members of the news media, and

requesting additional information about the FBI's policies and practices.  *See* Letter from the

Reporters Committee to Attorney General Holder and FBI Director Comey (Nov. 6, 2014),

http://perma.cc/NEB5-F6LK ("The utilization of news media as a cover for delivery of electronic

surveillance software is unacceptable.  This practice endangers the media's credibility and creates the appearance that it is not independent of the government . . . .").

15.     On the same day, The New York Times published a letter to the editor from Mr. Comey that defended the FBI's impersonation of an AP reporter.  Mr. Comey confirmed in his letter that the FBI had done more than merely create a fake news story attributed to the AP, but that an undercover FBI officer had also "portrayed himself as an employee of The Associated Press, and asked if the suspect would be willing to review a draft article about the threats and attacks, to be sure that the anonymous suspect was portrayed fairly."  *See* James Comey, Letter to the Editor, *To Catch a Crook: The F.B.I.'s Use of Deception*, N.Y. Times (Nov. 6, 2014), http://perma.cc/GZ4C-N6B5.

16.     Mr. Comey stated that undercover operations involving deception had "long been a critical tool in fighting crime," and that the FBI's use of such techniques "is subject to close oversight, both internally and by the courts that review our work."  *Id.*  Mr. Comey stated his belief that the FBI's impersonation of an AP reporter "was proper and appropriate under Justice Department and FBI guidelines at the time.  Today, the use of such an unusual technique would probably require higher-level approvals than in 2007, but it would still be lawful and, in a rare case, appropriate."  *Id.*

17.     Kathleen Carroll, executive editor of the AP, responded in a statement on November 7, 2014: "This latest revelation of how the FBI misappropriated the trusted name of The Associated Press doubles our concern and outrage, expressed earlier to Attorney General Eric Holder, about how the agency's unacceptable tactics undermine AP and the vital distinction between the government and the press."  Statement of Kathleen Carroll, *AP 'Outraged' by FBI Impersonation*, The Associated Press (Nov. 7, 2014), http://perma.cc/UX2U-H6CH.

18.     In a letter of November 10, 2014 to Attorney General Eric Holder and FBI

Director James Comey, AP President and Chief Executive Officer Gary Pruitt demanded

assurances from the Justice Department that the FBI would never again impersonate a member

of the news media.  "In stealing our identity, the FBI tarnishes [the AP's] reputation, belittles the

value of the free press rights enshrined in our Constitution and endangers AP journalists and

other newsgatherers around the world.  This deception corrodes the most fundamental tenet of a

free press — our independence from government control and corollary responsibility to hold

government accountable."  *See* Letter from Gary Pruitt to Attorney General Holder and FBI

Director Comey (Nov. 10, 2014), https://perma.cc/WXH3-8JFW.

19.     On or about November 6, 2014, the AP submitted a FOIA request to the FBI for

records seeking records regarding the FBI's impersonation of the news media in general and the

AP in the Timberline High School incident in particular. The AP's request was assigned tracking

numbers 1313500-000 and 1313504-000 by the FBI.

20.     On or about October 31, 2014, the Reporters Committee submitted two FOIA

requests to the FBI for records regarding the FBI's utilization of links to what are or appear to be

news media articles or news media websites to install surveillance tools, as well as guidelines

and policies concerning undercover operations or activities in which a person may act as a

member of the news media.  The Reporters Committee's requests were assigned tracking

numbers 1319113-000 and 1319138-000 by the FBI.

21.     On or about August 27, 2015, the Reporters Committee and the AP filed a lawsuit

in the United States District Court for the District of Columbia against the FBI and the DOJ

concerning the three FOIA requests referenced in paragraphs 19–20.  *See Reporters Committee*

*for Freedom of the Press, et al. v. Federal Bureau of Investigation, et al.*, No. 1:15-cv-01392

(D.D.C. filed Aug. 27, 2015).  That related lawsuit is currently pending.

22.      On or about September 15, 2016, the United States Office of Inspector General

released a report to the public titled "A Review of the FBI's Impersonation of a Journalist in a

Criminal Investigation" (hereinafter, the "OIG Report").  *See* Notice Regarding Report by the

Office of Inspector General, *id.* at ECF No. 26 & 26-1.  *See also* Office of the Inspector General,

U.S. Department of Justice, *A Review of the FBI's Impersonation of a Journalist in a Criminal*

*Investigation*, https://oig.justice.gov/reports/2016/o1607.pdf.  The OIG Report examined, *inter*

*alia*, "whether under Department of Justice and FBI policies in effect at the time of the 2007

investigation, agents obtained the appropriate approval for the undercover activities the FBI

conducted to locate the individual e-mailing the bomb threats."  *Id.* at ii.

23.      Both the AP and the Reporters Committee have written stories based on records

obtained though their lawsuit against the FBI and DOJ.  *See*, *e.g.*, Raphael Satter, *How a school*

*bomb-scare case sparked a media vs. FBI fight*, AP (Mar. 18, 2017), https://perma.cc/5YHP-

ARNZ; Hannah Bloch-Wehba, *FBI failed to follow its own rules when it impersonated The*

*Associated Press in a 2007 investigation*, Reporters Committee for Freedom of the Press (Apr.

28, 2016), https://perma.cc/6XTF-W62P;

**Plaintiff's FOIA Request**

24.      On or about December 5, 2017, Adam A. Marshall submitted a FOIA request on

behalf of the Reporters Committee to the FBI via facsimile (hereinafter the "Request").

25.      The Request seeks several categories of records from November 1, 2014 to the

present.  The purpose of the Reporters Committee's Request is to seek more recent records

concerning the FBI's impersonation of members of the news media, including records that the

Reporters Committee is informed and believes were not identified by the FBI in its previous search for records responsive to the earlier requests submitted by the Reporters Committee.  A true and correct copy of the Request is attached hereto as Exhibit A and is incorporated by reference.

26.    The Request specifically asked for:

- All records consisting of, reflecting, referencing, or discussing the FBI's utilization of links to what are or appear to be news media articles or news media websites to install data extraction software, remote access search and surveillance tools, or the "Computer and Internet Protocol Address Verifier" ("CIPAV"), since November 1, 2014[;]

- All records consisting of or reflecting the FBI's guidelines and policies concerning undercover operations or activities in which a person may act as a member of the news media, since November 1, 2014[;]

- The FBI's Interim Policy Notice (PN) 0907N, adopted on or about June 7, 2016, and titled "Undercover Activities and Operations — Posing as a Member of the News Media or Documentary Film Crew" (the "Interim Policy Notice").  The Interim Policy Notice is referenced on pages ii, 2, 7–8, and 22 of a report titled "A Review of the FBI's Impersonation of a Journalist in a Criminal Investigation" published by the Department of Justice's Office of the Inspector General in September 2016 (the "IG Report")  [ . . . ;]

- The "comments" provided by the FBI to the Department of Justice Office of the Inspector General in response to a draft of the IG Report, and referenced in footnote 30 of the IG Report [ . . .;]

- Any and all records consisting of, referencing, or discussing FBI efforts to inform its employees about the Interim Policy Notice[; and]

- Any and all revisions, updates, or modifications to the Interim Policy Notice since June 8, 2016.

Ex. A.

27.     The Request complied with all applicable DOJ regulations regarding submitting FOIA requests.

### Defendants' Treatment of the Reporters Committee's FOIA Request

28.     By letter dated December 11, 2017, the FBI confirmed acknowledgement of the Request and assigned it tracking number 1391028-000.  A true and correct copy of that acknowledgment letter is attached hereto as Exhibit B, and is incorporated by reference.

29.      By letter dated December 11, 2017, the FBI stated that "unusual circumstances" applied to the processing of the Reporters Committee's Request.  A true and correct copy of that letter is attached hereto as Exhibit C, and is incorporated by reference.  That letter did not specify which "unusual circumstances" applied to the Reporters Committee's Request, nor did it specify a date on which a determination was expected to be dispatched.  *Cf.* 5 U.S.C. § 552(a)(6)(B)(i).

30.     By letter dated January 23, 2018, the FBI stated that "additional FOIPA numbers were assigned to" the Reporters Committee's Request, originally assigned tracking number 1391028-000.  A true and correct copy of that letter is attached hereto as Exhibit D, and is incorporated by reference.  The "additional" tracking numbers specified in that letter are 1393556-000, 1393558-000, and 1393559-000.

31.     As of the filing of this Complaint, no further information or communication from Defendants concerning the Request has been received by the Reporters Committee.

32.    As of the filing of this Complaint, it has been 48 business days since the Request was submitted.

## CAUSES OF ACTION

### Count I

**Violation of FOIA for Failure to Comply with Statutory Deadlines**

33.    Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing paragraphs as though fully set forth herein.

34.    Defendants are agencies subject to FOIA.  5 U.S.C. § 552(f); 5 U.S.C. § 551.

35.    The Request properly seeks records within the possession, custody, and/or control of Defendants under FOIA.

36.    The Request complied with all applicable regulations regarding the submission of FOIA requests to Defendants.

37.    Defendants failed to make a determination with respect to the Request within the 20 working-day deadline mandated by FOIA.  5 U.S.C. § 552(a)(6)(A).

38.    Plaintiff has or is deemed to have exhausted applicable administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

39.    Defendants' failure to make a determination with respect to the Request within the deadline mandated by FOIA is a violation of their obligations under the law.

### Count II

**Violation of FOIA for Improper Withholding of Agency Records**

40.    Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing paragraphs as though fully set forth herein.

41.    Defendants are agencies subject to FOIA.  5 U.S.C. § 552(f); 5 U.S.C. § 551.

42.     The Request properly seeks records within the possession, custody, and/or control of Defendants under FOIA.

43.     The Request complied with all applicable regulations regarding the submission of FOIA requests to Defendants.

44.     Defendants have not released any records or portions thereof in response to the Request.

45.     Defendants have not cited any exemptions to withhold records or portions thereof that are responsive to the Request.

46.     Defendants have failed to identify whether or how disclosure of each of the records sought by the Reporters Committee's Request would foreseeably harm an interest protected by a FOIA exemption and/or why disclosure is prohibited by law.  5 U.S.C. § 552(a)(8)(A).

47.     Plaintiff has or is deemed to have exhausted applicable administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

48.     Defendants have improperly withheld agency records responsive to the Request in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

## <u>Count III</u>

### Violation of FOIA for Failure to Conduct a Reasonable Search

49.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing paragraphs as though fully set forth herein.

50.     Defendants are agencies subject to FOIA.  5 U.S.C. § 552(f); 5 U.S.C. § 551.

51.     The Request properly seeks records within the possession, custody, and/or control of Defendants under FOIA

52.    Plaintiff has or is deemed to have exhausted applicable administrative remedies.
5 U.S.C. § 552(a)(6)(C)(i).

53.    Upon information and belief, Defendants have failed to conduct a search
reasonably calculated to identify all records responsive to the Request.

54.    Defendants' failure to conduct a search reasonably calculated to identify all
records responsive to the Request amounts to a violation of their obligations under FOIA.  5
U.S.C. § 552(a)(3).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

(1) order Defendants to conduct a search reasonably calculated to identify all records
responsive to the Reporters Committee's Request;

(2) enjoin Defendants from withholding all records or portions thereof responsive to the
Request that are not specifically exempt from disclosure under FOIA;

(3) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

(4) award Plaintiff reasonable attorney fees and costs reasonably incurred in this action
pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) grant such other relief as the Court may deem just and proper.

Dated: February 14, 2018

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005

Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
*Counsel of Record for Plaintiff*

Bruce D. Brown
DC Bar No. 457317
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: bbrown@rcfp.org
Email: amarshall@rcfp.org
*Counsel for Plaintiff*